**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America, ) | CR 05-367-PHX-JAT |
| Plaintiff, ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| Antwain Chambers, ) | |
| Defendant. ) | |
| ) | |

Pending before the Court is Defendant's Motion to Suppress (Doc. #26) in which Defendant seeks to suppress all evidence obtained as a result of being stopped on March 30, 2005.

The parties do not dispute the law, which allows officers to briefly stop or detain an individual or car if the officers have "reasonable suspicion to believe that criminal activity 'may be afoot.'" *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 750 (2002); *Terry v. Ohio*, 392 U.S. 1 (1968). A Court determines whether there is reasonable suspicion to stop based on the "totality of the circumstances." *Id.* The officer must have a "particularized and objective basis for suspecting legal wrongdoing." *Id.* The officers may rely on their training and experience in forming their specialized opinion about potential criminal wrongdoing. *Id.* at 750-51.

In this case, Defendant was stopped because the officers suspected that Defendant possessed a machine gun. Defendant did in fact possess a machine gun which was visible

1 to the officers on the front passenger seat of Defendant's car. After being stopped, Defendant admitted that he knowingly possessed the gun and that he knew it was a machine gun.

To lawfully possess a machine gun, both the person possessing the gun and the gun itself must be registered in the National Firearms Registration and Transfer Record. 28 U.S.C. § 5841. When a person obtains a machine gun (from a manufacturer or another person), in addition to registering, the person must also pay a tax. 28 U.S.C. § 5812; 28 U.S.C. § 5811. Subject to these requirements, a person may lawfully possess a machine gun.

In this case, the officers had the following information at the time they stopped Defendant:

1. On March 13, 2005, Defendant took a gun to a pawn shop to be repaired. When the gun was sent out for repair, the repairman advised the shop that the gun was a machine gun, which appeared to have been converted from a semi-automatic rifle to a machine gun via tampering with the internal parts of the gun. The pawn shop called the police and advised them of this situation.

2. The gun was returned to Defendant and Defendant was advised that the gun was a machine gun and that the gun was illegal to possess.

3. The police attempted to investigate on this day, but Defendant had left the property by the time the police arrived.

4. On March 24, 2005, Defendant returned to the same pawn shop to attempt to purchase a magazine for the machine gun. The pawn shop called the police and advised them of this situation.

5. The police attempted to investigate on this day, but Defendant had left the property by the time the police arrived.

6. On March 30, 2005, Defendant again returned to the same pawn shop and attempted to pawn the machine gun.

7. The pawn shop did not accept the gun because the gun was illegal. Defendant did not deny that the gun was a illegal nor did he continue to attempt to pawn the weapon. Defendant never offered any proof of registration.

8. The pawn shop called the police and advised them of this situation. The pawn shop described the person attempting the pawn the weapon as the same person who had been there twice before, and that he was a black male, wearing a black t-shirt, and that he had a medium build. The pawn shop advised the officers that the person had entered from the rear of the store. The pawn shop also advised the officers that the person was alone.

9. The officers arrived to investigate and witnessed a vehicle leaving the rear parking lot of the store with a driver matching the description given by the pawn shop personnel.

As discussed above, the officers stopped the vehicle, which the Defendant was driving, and observed the machine gun in the front passenger seat. The officers later determined from ATF that neither the weapon nor the Defendant were registered.

Considering the totality of the circumstances, the officer knew that a machine gun is a premium item that is very expensive because of the small market for machine guns; therefore, it would be unusual to sell one at a pawn shop. Next, the officer knew that the process for lawfully obtaining a machine gun was a lengthy and complex one, of which any lawful possessor of the gun would be aware; therefore, a person who had gone through this process would be likely to know that a local pawn shop would not have the appropriate license and paperwork to deal with such an item.

Further, based on the information from the pawn shop personnel, the officers had reason to believe that the person they saw in the vehicle leaving the pawn shop possessed a machine gun. Additionally, the officers knew that though this person had engaged in several transactions involving the weapon, including discussions about the registration process, the person never claimed to lawfully possess it. This silence came after being told by the pawn shop personnel that the gun was illegal.

1       Based on the totality of the circumstances, the Court finds that the officers had a reasonable suspicion that criminal activity was afoot. The officers could reasonably believe, based on all of this information, that the person in the vehicle was in possession of a machine gun that the person was not lawfully allowed to possess. Therefore, they could stop the vehicle pursuant to *Arvizu*.

      Therefore, Defendant's Motion to Suppress (Doc. #26) is denied.

      DATED this 6th day of October, 2005.

_____
James A. Teilborg
United States District Judge